McGill *v.* Ott.

JOHN McGILL, Adm'r of David McGill, dec'd, *v.* W. A. OTT, Adm'r *de bonis non* of James McGill, dec'd.

BILLS AND NOTES.   *Payment.*   If money of the payor of a note come into the hands of the holder of the note the law would not presume that it was applied to the paymenl of the note, in the absence of any assent, express or implied, that it should be so applied.

FROM RUTHERFORD.

Appeal in error from the Circuit Court of Rutherford county.   R. CANTRELL, J.

J. W. BURTON, E. H. EWING, J. M. AVANT and E. D. HANCOCK for McGill.

PALMER & RICHARDSON for Ott.

FREEMAN, J., delivered the opinion of the court.

This is a suit brought on a promissory note, given by James McGill, defendant's intestate, to David McGill, plaintiff's intestate, in 1857, for $310.

The defense is payment, and a plea of set-off, based on the fact, as averred in the plea, that David McGill had taken charge of and sold bacon, lard and pork, the property of defendant's intestate, and had not accounted for the proceeds.

The jury, under the charge of the court, have found a verdict for defendant, evidently on the plea of pay-

ment, the finding being simply a general one for de-
fendant. If they had based their verdict on the plea
of set-off, the verdict and judgment would have so
shown, under our practice.

The testimony in the case would sustain the find-
ing of the jury under the plea of payment, if the
charge of the court gives the law correctly. A wit-
ness testifies that the plaintiff's intestate met defendant's
intestate in the road near his house, in or about No-
vember, 1861 (they being father and son), and said to
him, I have been selling some meat of yours, and have
a note of yours which is paid, and which you ought
to have, or which ought to be given up. The wit-
ness further stated, that the father went to the house
to get the note, but returned after a time, saying it
was mislaid, and could not then be found, but that
he would get it and hand it to him some other time.
The son was a soldier at the time in the army at
Bowling Green, Kentucky, to which he returned soon
after. In February after, he came home sick, and
died. The father died about a month later.

The matter of proof under the plea of set-off shows
a sale of meat in February, 1862, and cannot, there-
fore, be assumed to have been the transaction referred
to by the previous witness.

The only error assigned in argument for reversal,
is in the charge of his Honor, and his refusal to
charge as requested by plaintiff's counsel.

His Honor said to the jury substantially in one
portion of his charge, that if David McGill held a
note of James, and the money of the latter went into

his hands, that would not necessarily be a payment, without proof of intention that it should be a payment. He then added, however, that if money of James went into his hands, and was used by him, or was not accounted for, the law would presume an application of the money to the payment of the debt. This is the real theory in fact of his charge on this part of the case, as shown by subsequent and further statement of the last proposition cited. The statement is as follows: "Under such circumstances the holder of the note would have the right to retain enough of the money to pay his debt, although it was not intended as a payment when it came into his hands, and if it does not appear that another disposition was made of the money, you may presume that it was retained and applied as a payment." He was requested to charge that if the money of defendant's intestate came into his hands, and there was no proof, but a bare presumption of law that it was applied to the payment of the note, that this would not be sufficient.

What was charged, and what was refused, make it clear that his Honor held that the receipt of money from sale of the meat of the payor of the note, by the holder, unless the money was otherwise accounted for to the party, was as a matter of law, a payment of the note. In this we think he erred. It was clearly not paid by the payor to him for the purpose of satisfying the debt. If the payor of the note had not directed an appropriation of the money to the payment of the debt, the other party receiving as his agent could not be presumed to have so applied it,

unless some act or declaration of his, assented to expressly or by fair inference from conduct by the other party, had shown such an application to have been agreed on by the parties. A man who receives the money as agent of another, cannot simply in that capacity make an application of such money to the payment of his principal's debt, without the assent, express or implied, of the principal. The fact that the debt is due to him cannot change the principles. If he could not do so himself, the law would not presume that to be done, which it did not authorize the party to do. He was bound to account for the money to his principal, it is true, but this simply made him his debtor to that amount. If sued for it, he might under our law set off his debt under a plea, and then hold the money subject to such an adjustment of their rights. But this goes on the idea that each is a debtor to the other, and not that one debt has paid the other. The agent thus sued might decline to enforce his debt due by note as a set-off if he chose, and bring an independent suit for its recovery. If this be so, it is clear that the mere receipt of the money of his debtor, under the facts in this case, was not, as a matter of law, a payment, as his Honor charged. The law made no such presumption as is charged by his Honor. Whether the money received was a payment or not, was a question of fact for the jury, to be determined from all the testimony. The assent of the parties to such appropriation, either expressly or by fair inference from other facts, being the essential matter of inquiry.

We can see how his Honor's charge may have misled the jury, as under it, the money received for meat sold in February, 1862, and not shown in the proof to have been accounted for, might well have been held a payment as a presumption of law. For this error in the charge, the judgment must be reversed and a new trial had.